Filed 4/24/14  In re Deshaun D. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re DESHAUN D. et al., Persons Coming Under the Juvenile Court Law. | B251959 (Los Angeles County Super. Ct. No. CK99185) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. NINA W., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Stephen Marpet, Commissioner.  Affirmed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

_____

In this dependency case (Welf. & Inst. Code, § 300 et seq.),[1] Nina W. (Mother) challenges the portion of the disposition order requiring her to submit to random drug testing for marijuana and, depending on the results, enroll in a substance abuse counseling program. Mother argues the juvenile court abused its discretion in making the testing order because she had a valid medical marijuana license and there is no evidence she had a substance abuse problem. Mother does not challenge the jurisdictional findings regarding her physical abuse of her two sons or the other portions of the disposition order, including removal of her sons from her custody. We affirm.

## BACKGROUND

As set forth in the April 26, 2013 detention report, on Tuesday, April 23, 2013, the Los Angeles Police Department contacted the Los Angeles County Department of Children and Family Services (DCFS) regarding marks and bruises detectives observed on Mother's younger son, Nicholas (age 9). Nicholas went to the police station that day because he was being booked for bringing a box cutter to school and attempting to rob a classmate with it the week before on Thursday, April 18, 2013. Nicholas was taken to LAC + USC Medical Center for a suspected child physical abuse and neglect examination.

A social worker interviewed Nicholas on April 23, 2013, at LAC + USC Medical Center. Nicholas stated that Mother kept him home from school after the incident with the box cutter. On Monday, April 22, 2013, Mother "became angry" with him for bringing the box cutter to school and she hit him, causing the marks and bruises the detectives observed. The social worker asked Nicholas "why mother became angry yesterday, several days after the incident." As set forth in the detention report, "Nicholas stated that mother usually smokes something and calms down. Nicholas denied knowing what it is that mother smokes. Nicholas stated that he sees smoke coming out of

---

[1] Further statutory references are to the Welfare and Institutions Code.

2

mother's bedroom sometimes. Nicholas stated that mother did not smoke whatever she usually does and became angry with him that day."[2]

Regarding the manner of physical discipline Mother imposed on April 22, 2013, DCFS reported: "Nicholas stated that mother had him kneel on a sheet with rice underneath it and hold his arms out straight at his side. Nicholas stated that mother made him hold a can of 'chili beans' in each hand for as long as he could. Nicholas stated that when he dropped a can, mother would hit him with a broom stick. Nicholas stated that mother used the handle of the broom to hit him. Nicholas stated that mother also used a metal object to hit him, but he could not describe the object in detail to [the social worker]. He stated that it was a circular shape." Nicholas told the social worker Mother spanked him with a belt on prior occasions, and also hit him "with other objects 'two or three' other times" when he was seven or eight years old. Nicholas expressed that "he was afraid of mother and afraid to go home."

The doctor who conducted Nicholas's physical abuse examination reported, in pertinent part: "Nicholas has multiple large purple hematomas and multiple 2x6 cm pattern bruises on his arms, legs[,] trunk, buttocks and face. His physical exam is consistent with [a] history of being badly beaten by his mother."

The social worker also interviewed Mother's older son, Deshaun (age 12), on April 23, 2013. Deshaun stated Mother had spanked him with a belt in the past, but had never hit him with a broom or metal object. He denied the spankings had caused marks or bruises. He stated he was not afraid of Mother and was not afraid to go home. Deshaun denied seeing Mother "smoke anything at home or use any drugs at home."

---

[2] The police report regarding Nicholas's April 23, 2013 arrest states: "Detectives asked [Nicholas] why his mother punished him on Monday for an incident that happened on a Thursday. Nicholas stated that his mother smokes to relax. On the day that he got in trouble at school his mother smoked and was relaxed. At that time, she only punished him by making him write standards. On Monday when he was hit with the objects his mother hadn't smoked. Nicholas wasn't sure what his mother smoked."

Deshaun received a suspected child physical abuse and neglect examination at LAC + USC Medical Center.  The doctor who conducted Deshaun's examination reported, in pertinent part:  "Deshaun has old pattern marks on each upper arm consistent with a metal belt buckle, with the imprint of the frame and the tongue of the buckle visible.  These marks were 4x3 cm in size.  [¶]  Deshaun also has an old loop mark that was 4x1 cm in size on his right forearm.  This is the same size as the new loop-shaped bruises seen on Nicholas today during his forensic exam."  Nicholas told the doctor Mother sometimes hit Deshaun with a metal belt buckle.

The social worker interviewed Mother at her home on April 23, 2013.  Mother admitted hitting Nicholas with a broom stick on April 22, 2013 whenever he dropped one of the cans she forced him to hold in his outstretched arms while he knelt on rice.  She denied hitting him with a metal object.  Mother also admitted spanking her sons "with a belt on their buttocks about once every 1-3 months."

Regarding Mother's marijuana use, DCFS reported in the detention report:  "[The social worker] asked mother if she smokes anything daily.  Mother reported that she smokes marijuana daily and has a medical marijuana card.  Mother stated it [the marijuana] is kept somewhere in the home where the children can not [sic] access it.  Mother stated that she does not smoke in the home if the boys are there, but she will if they are at school.  Mother stated that she tries to smoke it outside.  Mother denied using any other drugs."

DCFS took the children into protective custody on April 23, 2013, and on April 26, 2013, filed a dependency petition under section 300, subdivisions (a), (b) and (j), with allegations regarding Mother's physical abuse of Nicholas and Deshaun and Mother's marijuana use.  At the April 26, 2013 detention hearing, the juvenile court ordered the children detained with their paternal grandmother and granted Mother monitored visitation and reunification services.[3]

_____

[3] The children's father was in prison, serving a sentence of 53 years to life for a 2008 first degree murder conviction.  He is not a party to this appeal.

4

In the July 1, 2013 jurisdiction/disposition report, DCFS reported that on June 20, 2013, Mother was convicted of felony corporal injury of a child under Penal Code section 273d, subdivision (a), based on the April 22, 2013 incident which led to the filing of this dependency petition. In accordance with a plea deal, Mother was placed on probation for five years with terms and conditions, including that she serve 180 days in jail, participate in a 52-week parenting class, and "agree to not consume any drugs unless provided with a prescription." The criminal court also issued a protective order requiring Mother to stay away from Nicholas and Deshaun for 10 years. Mother informed DCFS the protective order could be modified "once she enrolls in services and the criminal court knows she is able to receive reunification services with the children."

Regarding Mother's marijuana use, DCFS reported in the jurisdiction/disposition report: "The mother admits she smokes marijuana on a daily basis as a 'coping mechanism' to deal with stress, migraines and a diagnosis of RLS (restless leg syndrome). The mother states she does not smoke in the presence of the children and smokes when the children are at school. The mother states she has received a medical marijuana license since 3/2011 and renews the license yearly. DI [dependency investigator] Moore observed the mother to have several medicinal licenses since March 2011 with a current license being renewed on 3/27/13. The mother did not report she has a drug problem. The mother states she can provide medical documentation of her health issues from her personal doctor if needed and can always stop smoking marijuana."[4]

_____

[4] As set forth in the jurisdiction/disposition report, in connection with an October 2007 referral alleging Mother's general neglect, physical abuse, and emotional abuse of Nicholas and Deshaun, Mother told DCFS she smoked marijuana but not in her home or around the children. She also stated she did not keep marijuana in her home. Mother submitted to a drug test and the result was positive for marijuana. DCFS determined the children were not "neglected as a result of mother's drug use." DCFS referred Mother for a substance abuse assessment and substance abuse treatment, in addition to counseling and parenting services. It is not clear from the record whether Mother pursued any of the referrals. DCFS concluded the October 2007 allegations of physical and emotional abuse were unfounded, and the allegations of general neglect were inconclusive.

In the jurisdiction/disposition report, DCFS cited "mother's reported daily use of marijuana" as one of the reasons DCFS detained the children on April 23, 2013. DCFS concluded Mother's "parenting skills are negatively affected by drug abuse." DCFS reported it was "in the process of enrolling the mother in random/weekly drug testing." In the July 26, 2013 interim review report, DCFS stated it provided Mother with a bus pass and informed her she needed to submit to a drug test on July 3, 2013, but Mother did not show for the test.

In a last minute information for the court, dated September 25, 2013, DCFS reported Mother failed to show for drug tests on five occasions between July 3 and September 4, 2013. On July 23 and August 8, 2013, she tested positive for marijuana. The results from her test on August 21, 2013 were pending.

At the September 25, 2013 jurisdiction/disposition hearing, Mother completed and signed a waiver of rights form and submitted the petition, as amended, on DCFS's reports. The juvenile court sustained the following amended allegation: "On April 17, 2013 [*sic*], the children, Deshaun D[.] and Nicholas D[.'s] mother, Nina W[.] physically abused the child Nicholas by, including but not limited to, repeatedly striking the child's face and body with a broom and a belt, inflicting bruises on the child. Such physical abuse was excessive and endangers the child's physical health, safety and well-being and places the child and the child's sibling, Deshaun D[.], at risk of harm, damage, danger and physical abuse" (counts a-1, b-1 & j-1). The court also sustained the following amended allegation: "On prior occasions in 2013, the children, Deshaun D[.] and Nicholas D[.'s] mother, Nina W[.] has inappropriately physically disciplined the child Deshaun by striking the child's body with belts, inflicting bruises to the child's arms and legs. Such inappropriate physical discipline of the child by the mother endangers the child's physical health, safety and well-being and places the child and the child's sibling, Nicholas D[.], at risk" (count b-2).

In accordance with the agreement of the parties, the juvenile court dismissed count b-3, the allegation regarding Mother's marijuana use, which read: "The children, Deshaun D[.] and Nicholas D[.'s] mother, Nina W[.], has a history of substance abuse

6

and is a current user of marijuana, which renders the mother incapable of providing regular care of the children. On numerous prior occasions in 2013, the mother possessed, used and was under the influence of marijuana on a daily basis, while the children were in the mother's care and supervision. The mother's substance abuse endangers the children's physical health and safety, placing the children at risk of physical harm, damage and danger." The court also dismissed count a-2, alleging Mother's physical abuse of Deshaun.

With regard to disposition issues, Mother agreed with DCFS's recommended case plan to the extent it required her to attend a 52-week parenting class and to participate in individual counseling to address case issues. She objected, however, to the provision in DCFS's case plan regarding testing. Her counsel stated: "The only issue is the testing, and mother's not objecting to the testing, she's objecting to the testing requiring that her [marijuana] levels be dropping. The mother had a medical marijuana recommendation for restless [leg] syndrome and migraine[s] when the case came in. There was never any indication that there was use in the presence of the children. She has no prior history of drug abuse or substance abuse or law enforcement related issues to do with marijuana use or drug use of any kind. It doesn't appear that this is a situation where it's appropriate to require her to stop using the medication that she was using before she came to this court."

Counsel for DCFS explained she was not aware Mother was objecting to the testing requirement in the recommended case plan at the time DCFS agreed to settle the case with a dismissal of the allegation regarding Mother's marijuana use. DCFS would not have agreed to settle the case in that manner if it had known Mother was objecting to the testing provision. Counsel for DCFS argued the fact Mother has a medical marijuana card does not necessarily mean she needs to use marijuana every day as she admitted doing. Mother informed DCFS she could stop using marijuana, but she had not done so. DCFS believed it was an important part of the case plan that Mother stop using marijuana and that her levels go down.

The juvenile court declared Nicholas and Deshaun dependents of the court and ordered them removed from their parents' custody. The children remained placed with

7

the paternal grandmother. The court ordered reunification services for Mother, including a 52-week parenting class and individual counseling to address case issues. The court also made the following order: "The mother is to submit to 12 consecutive/weekly/random drug tests. If the mother tests dirty, her marijuana levels go up, and or has an unexcused missed test th[e]n she will need to enroll in a substance abuse counseling program and continue to test." The court stated it found a nexus between Mother's marijuana use and the abuse of the children. The court also granted Mother monitored visitation with her children, although the record does not indicate the criminal court had modified the 10-year stay away order.

## DISCUSSION

Mother contends the juvenile "court abused its discretion when it included orders for drug testing and substance abuse counseling as part of mother's reunification plan."

"If a child is adjudged a dependent child of the court on the ground that the child is a person described by Section 300, the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child . . . ." (§ 362, subd. (a).) "The juvenile court may direct any reasonable orders to the parents or guardians of the child who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out this section . . . . The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300." (§ 362, subd. (d).) "The reunification plan '"must be appropriate for each family and be based on the unique facts relating to that family."' [Citation.]" (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.)

A juvenile court may include a testing order in a reunification plan where the court has not sustained an allegation in the dependency petition regarding substance abuse or use, when "testing will facilitate appellant's compliance with the remainder of the reunification plan." (*In re Christopher H.*, *supra*, 50 Cal.App.4th at p. 1008.) "[W]hen the court is aware of other deficiencies that impede the parent's ability to reunify with his child, the court may address them in the reunification plan." (*Ibid*.) Accordingly,

8

Mother's emphasis on the fact the juvenile court did not assume jurisdiction in this case based on Mother's marijuana use is misplaced.

"The court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion. [Citations.] We cannot reverse the court's determination in this regard absent a clear abuse of discretion." (*In re Christopher H.*, *supra*, 50 Cal.App.4th at p. 1006.)

The juvenile court did not abuse its discretion in requiring mother to submit to random testing for marijuana and, depending on the results, enroll in a substance abuse counseling program. At the time DCFS detained Nicholas and Deshaun in April 2013, Mother was smoking marijuana on a daily basis. The record indicates Mother was smoking marijuana and testing positive for marijuana as far back as 2007. Mother had a current medical marijuana license, dating back to March 2011, but told the social worker on June 24, 2013 that she "can always stop smoking marijuana." Between July 3 and September 4, 2013, Mother tested positive for marijuana twice and failed to appear for five tests. She did not have any negative tests.

Mother told DCFS she smoked marijuana "as a 'coping mechanism' to deal with stress, migraines and a diagnosis of RLS (restless leg syndrome)." The fact Mother had a valid medical marijuana license does not mean the juvenile court was precluded from imposing a testing requirement as part of the reunification plan, to the extent Mother's marijuana use interfered with appropriate parenting. (See *In re Alexis E.* (2009) 171 Cal.App.4th 438, 453-454 [drug counseling and testing requirement in disposition order upheld where the father's use of medical marijuana threatened the physical and emotional health and safety of his children].)

As the juvenile court found, substantial evidence in the record establishes a nexus between Mother's marijuana use and her physical abuse of Nicholas. At nine years old, Nicholas was aware Mother smoked something in her bedroom to help her relax, and if she did not smoke it she would become angry. According to Nicholas, on the day he brought the box cutter to school, Mother had smoked and she was relaxed and she disciplined him by having him write standards. Four days later, Mother did not smoke,

she became angry, and she again disciplined Nicholas for bringing the box cutter to school—this time by striking him with a broom and a belt, inflicting marks and bruises.

The testing requirement was a reasonable exercise of the juvenile court's discretion in fashioning an appropriate reunification plan for Mother. Substantial evidence in the record demonstrates Mother used medical marijuana to relax and cope with her stress and that her daily use negatively impacted her parenting. Mother argues that, in imposing the testing/counsel requirement, the juvenile court was improperly interfering with a medical decision affecting her health. Yet Mother indicated to the social worker that she could stop using marijuana despite her purported use to deal with migraines and restless leg syndrome. The juvenile court reasonably required Mother's reunification with the children to be contingent upon her reducing her marijuana use.

## DISPOSITION

The disposition order is affirmed.

NOT TO BE PUBLISHED.


CHANEY, J.


We concur:



ROTHSCHILD, Acting P. J.



MILLER, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.